## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WELLS FARGO ADVISORS, LLC, | ) | |
| | ) | CASE NO. 8:10-cv-0422 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **BRIEF IN SUPPORT OF *EX PARTE*** |
| | ) | **MOTION FOR TEMPORARY** |
| LOY OLSON, | ) | **RESTRAINING ORDER AND** |
| | ) | **PRELIMINARY INJUNCTION** |
| Defendant. | ) | |

Comes Now Plaintiff Wells Fargo Advisors, LLC ("Plaintiff" or "Wells Fargo") pursuant to Federal Rule Civil Procedure 65 and respectfully submits this Brief in Support of its Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction enjoining Defendant Loy Olson ("Olson" or "Defendant") from further use or disclosure of Wells Fargo's confidential information and trade secrets.

### I.    BACKGROUND.

**A.    Basis For The Motion.**

Wells Fargo incorporates by reference its allegations within its Verified Complaint. As noted therein, Wells Fargo has developed internal programs, systems and information about its customers at great expense in both time and money. These programs contain confidential client and business information including, but not limited to, client identification and contact information, clients' current and past financial data, pricing, historical and current billing data, and other sensitive and confidential business information.

Olson had access to this information while an employee of Wells Fargo. In fact, he was a branch manager with many years of experience at Wells Fargo. Though his tenure as an employee with Wells Fargo has now ended, his use of this confidential and trade secret information has not ended. Specifically, at least one client of Wells Fargo has recently notified Wells Fargo that Olson,

while employed by a direct competitor of Wells Fargo, not only had Wells Fargo reports in his possession, but used them in soliciting business for that competitor.  <u>The information he used was generated after Olson left Wells Fargo</u>.  The nature of this data breach caused the client of Wells Fargo great concern about the security of its information.  It is unknown how many documents, client reports and similar information that Olson has in his possession, has disclosed to his current employer, or has used in his efforts to solicit business away from Wells Fargo.  In short, this data breach, while significant in its own regard, may well be the tip of the iceberg.  Wells Fargo has been unable, as of the filing of this Motion, to determine the nature and extent of the data breach.  The breach, however, in addition to Defendant's efforts to use this information on behalf of a competitor could be substantially destabilizing to Wells Fargo's relationships with its clients.

**B.**     **Notice Required Under Rule 65(b)(2).**

The ongoing breach of Olson's agreement that he not use Wells Fargo's confidential and trade secret information dictates that his conduct must be enjoined immediately, or Wells Fargo will continue to suffer irreparable injuries.  Again, it is unknown how significant a breach has occurred.  All papers filed in this case, including any *ex parte* TRO issued by the Court, will be immediately served upon Defendant at his business or home address.

**II.     LEGAL GROUNDS FOR A TEMPORARY INJUNCTIVE RELIEF.**

This Court may issue a temporary restraining order to prevent "immediate and irreparable injury, loss, or damage" when:

> (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the Court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b)

The decision to "grant . . . preliminary relief is within the discretion of the district court." *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 n.8 (8th Cir. 1981) (en banc). The active dismantling of a business as well as the loss of goodwill associated with a business constitutes an irreparable injury for which a TRO is an appropriate remedy. *See Moore Business Forms, Inc. v. Wilson*, 953 F. Supp. 1056, 1068 (N.D. Iowa 1996) (potential loss of business goodwill creates a threat of irreparable harm to former employer and injunctive relief is appropriate). *See also Battenkill Veterinary Equine P.C. v. Cangelosi*, 768 N.Y.S.2d 504, 507 (N.Y.App.Div. 2003) ("Loss of goodwill associated with a business, which is difficult to quantify, can constitute irreparable injury even if monetary damages, as well as injunctive relief, are requested"); *Martin v. Linen Systems for Hospitals, Inc.*, 671 S.W.2d 706, 710 (Tex. Ct. App. 1984) ("A dollar value cannot easily be assigned to a company's loss of clientele, goodwill, marketing techniques, office stability, etc."); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.").

The factual circumstances here, supported by the Verified Complaint, establish that Wells Fargo is entitled to injunctive relief. The likelihood that Wells Fargo will prevail on the merits is substantial as a third party has already notified Wells Fargo that Olson is providing Wells Fargo client information on behalf of another entity.[1] There is no justification for this clear and knowing breach of Olson's contract with Wells Fargo. In addition, Wells Fargo has already suffered, and will continue to suffer, irreparable harm as a result of Defendant's conduct. The harm to Wells Fargo greatly outweighs the harm to Defendant Olson, who will still be able to offer financial advisor

---

[1] Though Olson has agreed that this information is entitled to trade secret protection, the Court need not, at this stage, make that determination. Rather, the information is the property of Wells Fargo, and under Olson's Confidentiality and Nonsolicitation Agreement should never have been in Olson's possession after his termination from employment with Wells Fargo.

OM 105344.2

services and be employed by his current employer. Finally, the public interest will be served by the proposed injunction, and in fact, will benefit the public interest because the injunction will ensure that Defendant complies with his contractual, statutory, and common law obligations.

### A.   PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED

The United States Court of Appeal for the Eighth Circuit applies a four-part test to determine the appropriateness of preliminary injunctive relief. *Database Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The issuance of a preliminary injunction involves consideration of "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* In this case, all four factors favor granting preliminary injunctive relief to Plaintiff.

#### 1.   *Plaintiff Is Highly Likely To Succeed on the Merits*

"The first factor considered by the courts under *Dataphase* when ruling on an application for a TRO or preliminary injunction is the likelihood or probability of success on the merits." *Uncle B's Bakery, Inc. v. O'Rourke*, 920 F. Supp. 1405, 1423-24 (N.D. Iowa 1996). "When considering this factor, the court is not deciding whether the movant for preliminary injunction will ultimately win." *Id.*; *Glenwood Bridge Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991) ("[W]e are not deciding whether [Plaintiff] 'will ultimately win.'"). "In order to weigh in movant's favor, the movant's success on the merits must be...'sufficiently likely to support the kind of relief it requests.'" *Uncle B 's*, 920 F. Supp. at 1424.

The first *Dataphase* factor favors Plaintiff because Plaintiff is likely to succeed on the merits of its claims for breach of contract.  Defendant's confidentiality agreement (attached to the Verified Complaint) bars his use of Wells Fargo property, specifically key client customer information and

financial data. Confidentiality agreements are valid and enforceable in Nebraska. An employer in Nebraska is entitled to protect itself against post-employment unfair competition by an employee and protect "special information about customers, both current and prospective, that an employee obtains by virtue of employment" through execution of a valid noncompetition covenant. *See Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 472 N.W.2d 391, 401 (1991) (involving data pertinent to continuation of a customer's business and its goodwill). *Diamond Match Div. of Diamond International Corp. v. Bernstein*, 196 Neb. 452, 243 N.W.2d 764 (1976).

Under this authority, the limited restriction providing that Defendant may not use Wells Fargo's internal and confidential client information will be determined to be reasonable and enforceable, since the covenant is reasonably tailored to protect the legitimate interests of Wells Fargo, and the protection of sensitive financial data of its clients.

This is especially true given that Olson, during his very lengthy term as an employee with Wells Fargo, had access to the key financial information of Wells Fargo's clients. Since the covenant in the Agreement is no greater than is reasonably necessary to allow Wells Fargo to protect its business interests, the covenants are enforceable. Accordingly, Plaintiff is likely to succeed on its breach of contract claim and has therefore satisfied the first element for a preliminary injunction.

### 2.  *Plaintiff Faces Imminent Threat of Irreparable Harm*

In deciding whether to issue preliminary relief, "[t]he threshold inquiry is whether the movant has shown the threat of irreparable injury." *Uncle B's Bakery*, 920 F. Supp. at 1424 (citing *Glenwood Bridge*, 940 F.2d at 371). *See Moore Business Forms, Inc. v. Wilson*, 953 F. Supp. 1056, 1068 (N.D. Iowa 1996) (potential loss of business goodwill creates a threat of irreparable harm to former employer and injunctive relief is appropriate). "The fact that monetary damages will be insufficient to remedy plaintiffs' harm weighs in favor of enjoining defendants .]" *Aaron v. Target*

*Corp.*, 269 F. Supp. 2d 1162, 1173 (E.D. Mo. 2003), *reversed on other grounds*, 357 F.3d 768 (8th Cir. 2004).

Here, Plaintiff is suffering and will continue to suffer irreparable harm to its business goodwill and commercial reputation and will suffer further lost business opportunities if Defendant is permitted to continue to use Wells Fargo's internal and proprietary information concerning its clients on behalf of a third party competitor. Plaintiff's clients are being encouraged to end their relationship with Wells Fargo, and Defendant is using Wells Fargo's data to do so.

The impact of this conduct by the Defendant is to attempt to significantly destroy the relationships and the goodwill developed by Wells Fargo. Once the client leaves Wells Fargo under the impression that Wells Fargo cannot keep its information secure, Wells Fargo is likely to be forever shut out of doing business with the client. *See Moore Business Forms, Inc. v. Wilson*, 953 F. Supp. 1056, 1068 (N.D. Iowa 1996) (potential loss of business goodwill creates a threat of irreparable harm to former employer and injunctive relief is appropriate). *See also Battenkill Veterinary Equine P.C. v. Cangelosi*, 768 N.Y.S.2d 504, 507 (N.Y.App.Div. 2003) ("Loss of goodwill associated with a business, which is difficult to quantify, can constitute irreparable injury even if monetary damages, as well as injunctive relief, are requested"); *Martin v. Linen Systems for Hospitals, Inc.*, 671 S.W.2d 706, 710 (Tex. Ct. App. 1984) ("A dollar value cannot easily be assigned to a company's loss of clientele, goodwill, marketing techniques, office stability, etc."); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."). As the court noted in *Modern Controls, Inc. v. Andreadakis*, 578 F.2d 1264 (8th Cir. 1978), it is "unrealistic" to expect defendant not to attempt to utilize plaintiff's confidential information for the benefit of his new employer, especially where he has already done so.

### 3. *Balance of Harms Weighs Heavily in Plaintiff's Favor*

"[T]he balance of harm analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public." *Uncle B's Bakery, Inc.*, 920 F. Supp. at 1436. Federal courts have looked at the potential "economic harm" and "the threat to each of the parties' rights" when deciding whether to issue preliminary relief:

> To determine what must be weighed, the court finds that courts of [the Eighth] circuit have looked at the threat to each of the parties' rights that would result from granting or denying the injunction. Also, the potential economic harm to each of the parties and to interested third parties of either granting or denying the injunction is relevant.

*Uncle B's Bakery, Inc.*, 920 F. Supp. at 1436 (citations omitted).

Here, this factor also weighs strongly in favor of Plaintiff. The many years of goodwill and relationships that Plaintiff has worked hard to establish with its clients and the public will be lost unless an injunction is granted. There is no harm to the Defendant as he will be able to continue to be employed in his field and for his current employer. In fact, he need only stop possessing and using internal, proprietary, confidential and trade secret information for which he has no right. In comparison, the economic harm to Plaintiff is obviously substantial – it has already had a client raise a concern to it – as it may well have its very presence in Nebraska at issue with its clients who may question Wells Fargo's ability to safeguard information.

### 4. *Public Interest Decisively Favors Enjoining Defendants' Unlawful Conduct*

"The final factor in the *Dataphase* analysis is the impact of granting or denying the preliminary injunction upon the public interest." *Uncle B's Bakery*, 920 F. Supp. at 1438. Here, the public interest is overwhelmingly in favor of Plaintiff. Enjoining Defendant from any further violation of his contract upholds the validity of contracts. Knowing that such contracts will be enforced will assure businesses and employees in Nebraska that confidentiality agreements are a valid, enforceable means of protecting goodwill, confidential business relationships and information.

In addition, the public interest will be served by the issuance of a preliminary injunction because the Court will be assuring members of the public who have investments or accounts with Wells Fargo that former employees of those financial institutions will not use and disclose their private information in the effort to convince them to leave their financial advisors.

## CONCLUSION

For the above and foregoing reasons, Plaintiff is entitled to an immediate temporary restraining order, and subsequent preliminary injunction. Plaintiff respectfully requests that the Court issue injunctive relief pursuant to the Motion submitted herewith, and grant such other and further relief as the Court deems just and proper. A proposed Temporary Restraining Order is being tendered to Chambers.

WELLS FARGO ADVISORS, LLC, Plaintiff

By: s/ Joshua C. Dickinson
Joshua C. Dickinson, Bar Number 23700
Aimee C. Bataillon, Bar Number 22190
Attorneys for Plaintiff
Spencer Fane Britt & Browne LLP
9420 Underwood Avenue, Suite 200
Omaha, NE 68114
Telephone: (402) 965-8600
Fax: (402) 965-8601
E-mail: jdickinson@spencerfane.com
abataillon@spencerfane.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Nebraska on the 28th day of October, 2010, with notice of case activity generated, and copies will be served upon Defendant.

s/ Joshua C. Dickinson
Attorney for Plaintiff